Welcome to the second shift. This is the afternoon panel. December is always a time when we have several panels. We have five panels sitting this week, three in the morning and two in the afternoon. So welcome to you. I'm honored to be sitting this week with Judge Patrick Higginbotham, Senior Circuit Judge on our court from Texas, and Judge Cory Wilson from We have the circuit covered by the three states. So we have some interesting cases this week, and so we'll look forward to getting some help. I do want to, before we start, a lot of times when we have arguments, sort it to an empty courtroom, but it's good that we have a number of law clerks and other visitors. In particular, I know we have visitors from to observe and get a chance to see appellate argument. There may be other guests that I'm not aware of, but we're happy that you're able to come and hear the argument. So that said, we will call the first case, number 2060587, Aviles-Tavera v. Garland. Ms. Watson. Good afternoon. If it please the court, my name is Jacqueline Watson. I'm appearing on behalf of Petitioner Appellant Renferi, Aviles-Tavera. I have previously reserved five minutes for rebuttal. This is an immigration case. Mr. Aviles is a native and citizen of Mexico, and he has a long immigration history, but pertinent to the appeal at hand is his applications for withholding of removal and deferral of removal under Convention Against Torture. Mr. Aviles also has a criminal history. He has a conviction for, under Texas Penal Code 2201, for assault. Let me push you closer to the heart. Sure. We're real familiar with the procedural history in the case. As it was teed up, it's seen there were two principal issues. One was a jurisdictional one, which we were concerned about, and we asked counsel to file some supplemental briefs, and both of you have disagreed that there is jurisdiction. I would only say, if you want to say anything more about the jurisdictional piece, then fine, but if not, then you can cut to the core of the case. If there is jurisdiction, is there preclusion because of the prior determination? Did our cases in Guaixo-Canto change the standard, or are the elements the same on the merits? It seems kind of drilling down to help us out to determine which of these cases sort of govern. Yes. In the initial determination of whether or not this was a particularly serious crime, the determination was made pre-Guaixo-Canto, and it was also made pre-Sessions v. De Maya, and therefore, the original immigration judge who reviewed the issue decided the particularly serious crime issue, finding it was an aggravated felony under 8 U.S.C. 16-B felony. The second determination under Gracia-Canto was made under 16-A, and that was pre-Borden. So now, post-Borden, again, the analysis of that initial crime for the purposes of determining whether it is a particularly serious crime has changed. It has fundamentally changed. So under the statute 1231-B3-B2, the determination of whether or not it is a particularly serious crime, it is obvious it is a particularly serious crime if it is an aggravated felony with a five-year sentence. If it is not, regardless of sentence, an immigration judge or a fact finder can still go on and find it as a particularly serious crime by reviewing, and this is under board precedent, and the most pertinent cases being matter of NAM and matter of Frantescu. Those cases have a built-in gatekeeping function as well. The gatekeeping meaning the first review of whether or not something is a particularly serious crime is looking at the elements of the crime, as we do in immigration law. We look at elements and not, we look at what the elements of the offense, of the conviction are, and not what the respondent actually committed. That is what has changed the most since, during the pendency of this particular matter. So during the pendency of this particular matter, and the immigration judge and the BIA do rely very heavily on their analysis in Gracia Cantu in finding that the nature of this crime is a violent felony. And so, in summary, if a person is convicted in 2020-01 is recklessness, under board, and then this would no longer be a quote-unquote violent felony for immigration purposes. And that is the biggest difference, I think, in looking at this crime as a particularly serious crime. Because… Counsel, counsel, just let me interrupt you just a minute to clarify here. It I thought the question was whether the 2019 I.J. was precluded from revisiting the 2015 I.J.'s conclusion that even though this was a crime of violence, it wasn't a particularly serious crime. So, are we really arguing that Borden requires us to offend both analyses and send it back, or what? Because I'm not… I didn't really read that in your supplemental briefing either. Oh, well, I… I mean, I know you raised Borden, but I mean, this seems to be a different issue altogether than preclusion, or am I wrong? Well, yes. We are arguing in the alternative if the issue is not precluded. So, it is… the matter of… the issue of whether or not this is precluded is obviously what we would have preferred. Oh, but doesn't… doesn't the Borden argument you're making undermine the idea that this was settled in 2015? Well, only to the extent that if we are going to review it, if there is jurisdiction to review it, then even… even so, the matter has now changed and should be remanded back to the immigration judge for that appropriate analysis. Our principal argument… Well, but we'd be back to step one, right? In other words, what you had… if I understand it right, what you had originally asked us to do was to remand it because the BIA was in error finding that it wasn't precluded, or that it was precluded. Wait, it wasn't precluded. I'm confusing myself. Was… was precluded. That it was precluded. And so, now what you're arguing, I guess, is that we need to remand this to allow the BIA or the IJ to determine yet again whether he was statutorily barred from withholding a removal? In the alternative. So, as an initial matter, just to review the… we agree there's jurisdiction to even review whether or not a particularly serious crime was committed because there are elements of discretion and law. The… So, your position on that point is that even though the statute talks about the attorney general having the ability to decide or determine things, that it's not an express grant of jurisdiction. Correct. How's there a difference? Well, the difference is, I guess, as an immigration law practitioner, I do understand that they… especially in a case like this, where there are multiple… multiple proceedings, multiple administrative proceedings. Now, of course, again, we do argue at the outset that the issue should be precluded because the initial judge did properly weigh the… the evidence and the crime. He properly analyzed the crime, even though he did find it was an aggravated felony. And even that law has changed twice. It is flipped twice. But the initial determination was correct and the issue should have been precluded. And that the immigration judge… the second immigration judge in the most recent proceeding was… would not… should not have been able to go back and review that initial determination. But if you lose on preclusion, because someone put a second as argument, that you lose on that issue, you're saying you want a remand? Yes. Yes. So, on… always hedging bets that we might lose on preclusion, our alternate argument is that, again, just as with the immigration judge, how she found… But what's going to be different? I mean, I know you're… you know, the cases, but I mean, remanding, I mean, for another bite of the apple, but I mean, all these scenarios are really fixed. You know, when he was, where he was, the debate is over, okay, what are the elements, what we're covering, so why does that require going back to an IGA to sort out the up or down here? I mean, it's not going back for any kind of fact finding of any sort, unless you are in some kind of way, an equation, credibility should have been taken into account. I don't hear you arguing that. So, how do I get away from that? The argument is just not to string this out further, as opposed to trying to get a final answer. Yes. So, the only issue to… well, the main issue that the immigration judge would need to revisit was her gatekeeping analysis of the offense, in which case all her findings about the seriousness of this crime and how it is a particularly serious crime hinged on it being found to be, by looking at solely the elements, a violent felony. That changes the, that changes the analysis of this crime, and possibly even this discretionary element of this crime. But the, the, even with the analysis of the crime the first time, again, as an aggravated felony, which it wouldn't be now, even that analysis, which it wasn't found to be, it is the same facts, and it is the same crime. So, under, under the Amarola v Napolitano, you have the same issues, same facts, different determination, but that initial determination was already made and should therefore stand. In immigration law, and, and, I mean, in any law, of course, you want to have finality on issues. And so, in that determination of whether or not he was, he, he was convicted of a particularly serious crime, I, I do argue, and, and I do agree that nothing had really changed between when the first immigration judge took a look at this. In fact, he judged the, he judged that crime just as harshly. He also found it was an aggravated felony, but then found the circumstances did not support a finding of particular seriousness. And in the second, the judge granted Gracia Cantu was, was binding law on her at that time, also found that it was a aggravated felony, but came to a different conclusion. So, yes, our, our strongest argument is that this was not a particularly serious, that, that the issue was precluded by the second immigration judge from revisiting that. I got you. Your first story you would want us to say is precluded. I got that down clear. I think we have. That's, that's the first part. But if you lose on the preclusion issue, that's where it's getting a little bit fuzzy in terms of exactly what you're, you know, what you're wanting. I guess in reading the briefs, it didn't signal clear to me about a remand, you know, to go back to, to, to go back down. But I hear you. Yes. So, so the reason we would, we would urge a remand. Well, let me put it to you this way. Assuming that we were to come out and say, uh, the issue is not precluded, then articulate for me what the panel would say in the remand order. What would we be saying is remanded and for what? Remanded for the purpose of evaluating the particularly serious crime under the proper legal standard. And the reason that is important in this matter is because her analysis of the, the other issues in the case really hinged on his being, uh, convicted of a particularly serious crime and not having fully fleshed out the, the, um, subsequent eligibility. But I still say, even if you're right, it's here on the table, the argument of the three judges. What is the ability of the immigration judge to apply the correct law that the panel doesn't have in this state, knowing what the case law is? I mean, I'm just trying to, what requires us to remand as opposed to making a plenary determination of what the law is and decide the case. That's where you're losing me on what case are you depending on that requires the panel. Again, say it differently. If you lose on your conclusion argument, I get it, that's what you want. But if you lose on that and you're back here saying what case are you relying on that requires us to remand it back down because you're not arguing there needs to be a remand to take into account credibility, any of that. Remand to correctly apply the law. And I'm going to know why isn't the Fifth Circuit at this juncture able to quote, apply whatever the correct law is in this instance. You understand my question? I do understand your question. And I agree wholeheartedly that the Fifth Circuit is capable of applying the correct state. I understand you wouldn't want to offend us by saying we're not capable. No. I mean, I get that you wouldn't want to be put in that position, but I'm just trying to push it to the point. What is unique about the immigration statutes that would require the determination of the legal efficacy at this time by the immigration judge, as opposed to it's been appealed to us and you started by saying has a long procedural history. So what is it that prevents a court of appeals from applying the correct law? There is nothing. You sure I'm saying? Yes, I do see what you're saying. Why is it? I mean, it's here now. So what would prevent us, whatever we say it is, to say, you know, this is what it is. And so if that were the case, then you've got a red light, but that's okay. So assuming remand does not work, it got no traction, then what is it you would have the panel say? I would have the panel overturn that, apply the appropriate standard and find that this is not a particularly serious crime. I do not have a case that would mandate really the return to the immigration judge, except that unless the . . . I really don't have a really good explanation for why the Fifth Circuit could not do that. And I would agree and I would say this panel does have that power. Okay. All right. Well, I just want to make sure it was clear, you know, on that piece. But you've properly reserved your rebuttal time. Let's hear from the government and then when you come back up on rebuttal, if you've had a chance to think more about the question, you certainly have that option. But thank you for your opening argument. Thank you. All right. All right. Mr. Robbins. May it please the Court. My name is Jonathan Robbins. I'm here on behalf of Merrick Garland, the respondent in this matter. Good afternoon to all of you. The two issues, or the two primary issues in this case, are first, whether the agency correctly found that petitioner's assault conviction or family assault conviction was a particularly serious crime precluding the grant of withholding of removal. And then the second issue is whether or not the record compels reversal of the agency's denial of petitioner's application for protection under the regulations which implement the Convention Against Torture. Now, I know that . . . I think I should probably start just by briefly addressing the issue that the Court asked about in the supplemental order with supplemental briefing regarding jurisdiction. It is the government's view that there is jurisdiction to review the merits determination of a particularly serious crime determination. As we've explained in our supplemental briefing, that didn't used to be our view until the Supreme Court issued its decision in Kukana. But Kukana makes clear that unless the statute in question specifies that the decision or action of the Attorney General is in the Attorney General's discretion, then there is a strong presumption in favor of judicial review. So back to my question of counsel opposite, even though the statute says the Attorney General can determine or can decide, that's not enough? Correct. Is there an instance of a language like that where the Attorney General can decide or determine where there isn't also discretion? Well, certainly when Congress wants to delegate something to the Attorney General's discretion, it knows how to do so. We've seen language like may or in the Attorney General's discretion. So there are certainly instances in the statute where things are without question unambiguously specified to be in the discretion of the Attorney General. Yeah, but that's not present here. That discretionary gate. Exactly. Language is not here. That's exactly the point, Your Honor, which is why we've taken the position that there is jurisdiction. Because the language in the withholding statute only uses the terms decides and determines. In the government's view, that is not sufficient to meet the Supreme Court's requirement that the discretion be specified. Is there a decision or a determination without discretion? It's not much of a decision, is it, if there's only one thing you can do? Well, in Kakana, what the Supreme Court was looking at was denials of motions to reopen. And I think we would all agree that the board has discretion to deny a motion to reopen. So the fact that the decision itself might be discretionary in nature isn't the controlling factor. What the Supreme Court said is that it has to be specified in the statute. Implied is not enough. Exactly. Implied is not enough. So unless there are any specific questions with respect to jurisdiction, I'll move on to what I think is maybe the main sticking point in this case, which is issue preclusion. In order for issue preclusion to apply, the legal standard in assessing the issue in question has to be the same. If it is changed, issue preclusion doesn't apply. And as the board correctly pointed out in this case and the immigration judge, this court's decision in the Gracia-Contu case changed the relevant standard for how we would assess a particularly serious crime determination. Because in that case, there was a change in the way the elements of the offense were interpreted. So in the 2015 decision by the immigration judge, the immigration judge noted in that case, with respect to the statute in question, it said that under the Villegas-Hernandez case, which has now been overturned, a misdemeanor violation of the assault statute in question is never a crime of violence under 16A. And 16A requires looking at the elements of the offense. You have to look at whether the elements of the offense involve the physical use of force or the threat of the use of physical force. So in other words, the immigration judge in that case wasn't looking at the elements. He specifically stated in that case that the elements did not make this a crime of violence. Obviously, that has changed since this court's subsequent decisions in the Gracia-Contu case. What effect does the board's denial of CAT and its formulation and statement of the reasons, language like, based on the entirety of the record, the respondent has not established that it's more likely than not to be tortured, and it goes on to say that in the number of elaborated findings, what's the effect of those? Those are directed at the CAT, but the underlying factual affirmative statements there may well sweep beyond CAT. Well, okay, so just to be clear, we're moving away from the issue preclusion because issue preclusion doesn't apply to the CAT holding. If you're asking about why the record doesn't— I understand that, but I'm assuming that you do have some issue preclusion here, and you still have CAT. What about the findings under CAT? What bite do they have? Okay, so in order to establish eligibility for CAT protection, Petitioner had the burden of demonstrating that he faces a clear probability of torture by the consent or acquiescence— Well, look, at the language, actually, of the board, based on the entirety of the record, the respondent has not established it's more likely than not to be tortured or at the instigation of our consent or acquiescence of public officials or other persons that act in the official capacity of Mexico for any reason, even including country conditions. The respondent's past military treatment or his mental health. Now, those findings are independent of the questions of issue preclusion. So what's the effect of that? Well, the effect is that the court has to look under the standard of review as to whether the record— I'm sorry. The court, under the standard of review, is required to look at whether the record compels reversal of the agency's denial of relief. In other words, the agency in this situation found that Petitioner did not establish that he faced a clear probability of torture with the consent or with the acquiescence of a Mexican public official. And so you would look to see if there's substantial evidence in the record to support that determination, and there absolutely is. Assume that's true, then where are we? Well, then the court should deny the petition for review with respect to Kat because there's absolutely substantial evidence in the record to support the determination that Petitioner failed to meet his burden of proof. Whenever we're dealing with an individual who's suffering from when they go to a country where they don't have the same degree of medical— I can't follow your last statement. Oh, I'm sorry. It's certainly reasonable to be concerned about what will happen to somebody who suffers from mental health issues when they go or are removed to a country where there is a diminished amount of medical care for these types of situations, and I think probably that is the situation in Mexico. But the problem with the Petitioner's claim is that it is based on a long chain of assumptions, and the Petitioner has the burden of showing that each link in the chain of assumptions is more likely than not to occur. So, for example, he claims that he's going to be harmed because he'll be institutionalized, but he didn't demonstrate a clear probability of that actually happening. His own expert couldn't testify as to what specific mental disorder that he had. He speculated that he did have one, but couldn't provide any details about a diagnosis or any specifics. He's never been institutionalized in Mexico before because—and certainly he has had many medical visits in Mexico, visits to clinics and psychologists. None of them ever felt fit to institutionalize him. So, for example, for that link in the chain, he didn't establish that it would be more likely than not to happen. A lot of things have to happen before somebody faces harm rising to the level of torture in a mental institution, and Petitioner, each link in the record, is the notion that there would be acquiescence by the Mexican government to his torture. He really hasn't provided any reason why anybody in the Mexican government would be seeking him out for torture. He's not really a person of influence or authority or anything that would make the government interested in torturing him. I would also point out that the government has cited a long body of case law that explains that when it comes to CAT claims, you have to be able to show that the government in question has the specific intent to torture. And if you look at the case law, particularly the cases that we've cited in our briefing, including from out of circuit as well, but that we think have some persuasive authority, this is not the first time the courts have looked at the situation with respect to mental health institutions in Mexico. And the general theme from all the courts of appeals on these issues is that there's no evidence that the Mexican government specifically intends to torture its people. I don't think there's much dispute that sometimes the conditions in these institutions are not good, but it's not a result of a specific intent by the Mexican government to create an environment that is specifically intending to torture people. And so that's why the courts of appeals have, in many of these cases, put a particular emphasis on the applicant's failure to establish the requisite specific intent in order to establish a CAT claim. Counsel, let me direct you back to this issue of issue preclusion. Yes. You started talking about the changes because of Gracia Cantu, and my question was about to be, so basically what you've got here is not the whole test changing that you would go through to determine whether something was a particularly serious crime. You've got one of the elements changing to the extent that what is a crime of violence may be a little clearer than what it was in 2015, right? Right. Well, so what if it doesn't make a difference? In other words, is this really a change or is this enough to upset the apple cart so that preclusion doesn't apply? I think it's a significant change because the first thing you look at in assessing whether a crime is particularly serious is you're looking at the nature of the offense, and you look at nature by examining the elements. The first immigration judge looked at these elements and said that under Fifth Circuit law, this isn't a crime of violence under the element-based analysis. And if I was following you, you quoted something that basically said this misdemeanor is never a crime of violence. Move on to step two, effectively, right? Yes. It's in a footnote in the prior immigration judge's decision. Yeah, and so in 2019, by contrast, we had new precedent that said, don't proceed to step two. You engage in the elements analysis, and it's a crime of violence. It can be a crime of violence, right? Yes. But in 2015, the IJ still concluded that this was a particularly serious crime, right? Or, in other words, didn't agree with you on the element, but agreed ultimately on the analysis, right? Or am I confused? Well, I wouldn't say he disagreed with us on the elements. I would say he didn't . . . Just didn't look at it. Look at the elements. Okay. The problem is he didn't have reason to at the time because of what the law said about the element. Under the elements-based approach, it wouldn't have been a crime of violence. But so how does looking at the elements in 2019 change the outcome when . . . Because in the board's decision, particularly the board's precedential decision in MAM, it has held that when you look at the nature of the offense, the language of the statute provides, quote, the essential key to determining whether a crime is particularly serious, which is whether the nature of the crime is one which indicates that the alien poses a danger to the community. So the first time around, they didn't even look at the elements because they weren't determined to be a crime of violence. And in fact, the immigration judge said it's never a crime of violence. Those were the terms that the immigration judge used. And now we know that it's categorically always a crime of violence. Well, the nature of the offense then is dramatically changed such that it would affect whether or not we would determine whether the alien is a danger to the community. What about . . . I'm sorry. What about counsel opposite's Borden argument? I'm sorry, what? What about counsel opposite's Borden argument? Well, as Your Honors, I think maybe alluded to, that wasn't an issue. Certainly, it wasn't exhausted before the agency. And I don't even recall seeing it in the petitioner's briefing in this case. It was raised in the supplemental briefing. I may have missed it in the supplemental briefing. However, petitioner could have raised the same argument that Borden made in all of the proceedings below, which I think was a claim based on the sufficiency of the mental state as to whether it could constitute a crime of violence. If they think that changes the analysis, the proper thing to do is to ask the board to reconsider the decision in light of the Supreme Court's law. But that wasn't raised in their opening brief. That wasn't raised before the agency before. I mean, Borden didn't have to exist for them to have potentially made that argument. The government's position is that counsel is precluded from relying on Borden for preclusion. Well, well. Or lack of preclusion and remand. It's a little bit different, Your Honor. I would say that this court doesn't have jurisdiction to review it because it hasn't been administratively exhausted. The statute requires for the court, in order for the court to be able to review something, they have to take it to the agency first. This is a, even though Borden, I do concede, constitutes a new law, the issues raised in Borden, nothing would have prevented them from raising the same issues that Borden raised. But they didn't make those arguments. So the board didn't have reason to address them and hasn't had an opportunity to address that argument. So I would say that remand isn't appropriate unless the issue has been properly exhausted. Now, the petitioners, I suppose, could file a motion to reconsider with the agency in light of the new Supreme Court precedent that would be able to maybe get this issue. I don't know if the board would look at it, given the length of time that's passed. Obviously, it's beyond the filing for a time for a motion to reconsider. Back to preclusion, what's your best case that a change in one of the elements versus a wholesale new test or, I mean, what tells us what's enough of a change for preclusion not to apply? Well, I don't have a case on this exact issue because I haven't, I don't think there is a case on this exact issue with respect to a particularly serious crime determination and reassessing a particularly serious crime determination. The closest cases are the ones that are cited on I don't remember the name of the case offhand, just one moment. Amarala is the case. Amarala versus Napolitano is the one that says that when issues of fact are not identical or the same and if the legal standards governing their resolution are significantly different, then issue preclusion is not appropriate. And because there's an overlap here in the 16A analysis with, because you're looking at the elements in 16A, right? You're looking at the element of whether some, there's use of physical force or the threat of the use of physical force. Because the law on that is so dramatically changed now with respect to the elements of this exact offense, it changes the outcome because you're looking at those same elements in the particularly serious crime determination and that overlap in law creates the change that's necessary to, that would prevent issue of preclusion from applying in this case. Do you think Amarala is what governs us because there we found that a change in the legal analysis wasn't material? Well, I would, the law that's stated in Amarala is what's controlling. I agree that the facts of the case in that case weren't material, but our point here is that they're absolutely material. If you're now interpreting the elements of this offense to have this constitute, you have as an element the use of physical force. That plainly affects whether or not the crime is going to be particularly serious because crimes involving physical force are, have a much greater likelihood of being deemed particularly serious. So unlike Amarala, the change here is plainly material. So I see that I'm running low on time. I think we've covered everything. Do you have any further questions? You heard my questions to counsel opposite about the whole remand case. I mean, preclusion, you know, that bars the government and she, I don't mean counsel, but a client, gets the benefit of, you know, the initial determination. And so it's not hard to figure out why that's, you know, primary argument is to be a part of that. But as you heard me say, assuming that we didn't hold preclusion, you know, what was her take on the merits, and as far as trying to just flesh out that part, and particularly when she said about remanding, you heard me ask, okay, if we're remanding, what are we remanding for? What instructions are we giving? What case says remand? So my question to you is what's your response to that line of thought about remand and so forth? Our response is that remand is not appropriate here because the issue that she wants to remand for is one that she could have raised in proceedings below. Admittedly, again, Borden was not issued, so that is intervening law, but the underlying argument in Borden could have been made. In other words, Borden made the argument in the first instance, and Petitioner could have done the same thing in this case. So because they did not exhaust this issue, it's not appropriate to remand for an issue that could have been exhausted, but wasn't. So for those reasons, we would respectfully disagree with the request for  Thank you very much for your time. I take it you do a lot of these cases? Yes, Your Honor. I think I've seen you somewhat recently, didn't I? I was here this morning, although you weren't sitting on that panel. No, but I thought I had an immigration case not long ago, it looks like to me. I've been in a few, yeah. So you're the designated immigration DOJ person to pull all this together. I just seem to remember having this immigration, and we had some deal in another circuit, and we were particularly concerned about that. And we were particularly trying to probe this, and I guess because you're the designated person, you get to know what's going on in all these circuits, right? I do. I certainly argue in all the circuits, but I'm not the designated person. There's a lot of us that come out here to argue. All right. Just curious. We want to know what's going on. Immigration is just a particularly, you know, kind of precarious piece, because there's so many layers to it, and, you know, we're just trying to get it right. It's a very challenging area of law, no question. In making, and I think we were a bit surprised when we saw the government's position on the jurisdictional piece that DOJ had changed its position, but it is what it is. But that's why we have arguments, so we can . . . Well, just for the court's information, the position that the government took in that case had long been vetted before the court issued its order, and including by the Solicitor General's office. So it's very important to that office to make sure that our positions are consistent from case to case. And so I know that it may seem a bit surprising that we argue that there's jurisdiction. I know it was a little bit surprising to me when I came across it, but that is to ensure that we maintain consistent positions from case to case. Okay. All right. We appreciate your argument. And so, Ms. Watson, we'll hear back from you on rebuttal. Thank you for your time. Thank you. Thank you. I . . . To first ask the question that was asked of me earlier about what would be our best case for remand, I think the best case I think we have for remand would be Cabrera v. Sessions. Because the holding in Cabrera v. Sessions was that the issue was slightly different, but the case was remanded . . . The essence of Vorden, those arguments were available to your client, and that those could have been assertive to the agency and they weren't. So his argument from the government is that remand would be inappropriate because we wouldn't have jurisdiction in that sense as a non-exhaustive issue. And that wasn't the way it was sort of primed when you were up here before about it. So what do you say to that aspect of the remand, that this is a non-exhaustive issue, that the agency hasn't had a chance? The only way you get a remand is to have exhaustive. Well, we certainly raised the issue in our brief. We raised the issue of legal error in the particularly serious crime evaluation in our brief at pages 15 to 16. Now, granted, we could not have argued as specifically as Vorden because it was pre-Vorden. Our brief was submitted before Vorden. Vorden came out in June 2021. Well, he's not arguing that you didn't argue the Supreme Court's holding in Vorden, but he's saying the arguments or claims that were existing in Vorden were available to be argued as an argument on behalf of your client, not citing Vorden, but those could have been articulated to the agency itself in your client's claim. And that's what the government is saying, that no remand, not because you didn't cite a case that had never been issued, but that the core of it was available to be pressed and you didn't, so that's a non-exhaustive piece. That's what I understand the government's saying. Yes, well, being unable to anticipate such a specific argument due to a change in law would have been very difficult. In hindsight, certainly that may have been the case, but we did argue that the immigration judge did not apply the correct legal standard. We argued both issue preclusion and that she did not apply the correct legal standard, that she misapplied board precedent in evaluating the offense as a particularly serious crime. And again, the issue of whether or not this itself is an aggravated felony would not necessarily be what the determination would, whether or not it's a particularly serious crime, would turn on because he was not sentenced to over five years. So therefore, it's not automatically one of the cases that requires a finding of particularly serious crime. It is her application, or her use, I should say, of gracia cantu in finding that it is a violent felony and really just relying on that to find the second part, so apart from the gatekeeping function, looking at the facts and circumstances surrounding the conviction, she did specifically state that because it was a violent felony, she found it was a particularly serious crime. So that is, we didn't exhaust the issue with such specificity as we're able to do now, but at the time, we did raise the issue of her misapplication of the legal standard to determine a particularly serious crime. So as I was saying, I think Cabrera v. Sessions would be the most appropriate case that would support a remand. And again, the issue of whether or not this was a particularly serious crime affected the rest of the immigration judge's finding of the evidence in the case and looking at the factors in the case. I can't even tell you what her particular social group analysis was because she did not get into it, finding instead that he was precluded from applying for withholding of removal. And I am out of time, and I will stop. All right. Okay. Well, thank you, Ms. Watson. Thank you. Thank you.